

**IT IS ORDERED as set forth below:**

**Date: July 24, 2018**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISON

| | | |
|---|---|---|
| IN RE: | : | |
| | : | **Chapter 7** |
| AKBAR BALUBHAI ALI and ANILA S. MAMDANI, | : | |
| | : | **Case No. 15-61641-pwb** |
| Debtors. | : | |
| | : | |
| ARIF MERCHANT AND IRFAN MERCHANT, | : | |
| | : | |
| Plaintiffs, | : | |
| vs. | : | **Adv. No. 17-05230-pwb** |
| | : | |
| AKBAR BALUBHAI ALI, | : | |
| Defendant. | : | |
| | : | |

**ORDER ON PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [6]**
**AND DEFENDANT'S MOTION TO SET ASIDE DEFAULT [12]**

Arif Merchant and Irfan Merchant (the "Plaintiffs") filed a complaint on August 28, 2017 for determination that debts owed by Akbar Balubhai Ali (the "Debtor"), the Chapter 7 debtor, are excepted from discharge under 11 U.S.C. § 523(a)(2) and (6).  [1].  August 28 was the last

day for the timely filing of the complaint.[1]  The Debtor's bankruptcy attorney sought and obtained extensions of time to file responsive pleadings until December 11, 2017, but the attorney neither sought to withdraw from representing the Debtor nor filed any defensive pleadings in this proceeding.  The Defendant did not file anything on his own behalf.

At the request of Plaintiffs [5], the Clerk entered the Debtor's default on December 20, 2017.  On December 22, 2017, Plaintiffs moved for entry of default judgment.  [6].

Because of the Court's concern about whether it should enter default judgment based on the allegations of the complaint, the Court on April 6, 2018, scheduled a hearing on the motion for April 24, 2018.  [7].

The Plaintiffs contend that, on February 18 and April 10, 2018, the Debtor told Arif Merchant and his attorney that he would not oppose entry of default judgment.[2]  Nevertheless, on the day before the scheduled hearing, the Debtor, through new counsel, filed a Motion to Set Aside Default [9], a Response in Opposition to Plaintiffs' Motion for Entry of Default Judgment [10], and an answer to the complaint.  [11].

At the hearing, the Court provided the parties additional time to brief the question of whether the Court should set aside the default or enter default judgment.  After careful consideration of the arguments advanced by the Plaintiffs [12] and the Debtor [13], the Court for reasons set forth below will exercise its discretion to set aside the default.

The Court may set aside entry of default for "good cause." Fed. R. Civ. P. 55(c), *applicable under* Fed. R. Bankr. P. 7055.  The Court has discretion to set aside an entry of default. *E.g., Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984).

---

[1] Complaint ¶ 8 [1 at 2].
[2] Plaintiffs' Opposition to Motion to Set Aside Default [hereinafter "Plaintiffs' Opposition"] ¶ 10 [12 at 4].

2

In exercising its discretion with regard to setting aside a default, a court properly considers a number of factors to determine whether "good cause" exists, including: (1) whether the defaulting party presents a meritorious defense; (2) whether the failure to act was willful; (3) whether the defaulting party acted promptly to cure the default; (4) whether setting aside the default would prejudice the adversary; (5) whether there is a matter of public interest; and (6) whether the defaulting party has suffered a significant financial loss. *E.g., Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). In exercising its discretion, the Court is mindful of the strong policy favoring the determination of a case on its merits. *E.g., Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993).

Even if the Court does not set aside the default, it must still consider whether to enter default judgment. Entry of default judgment is discretionary. *See* Fed. R. Civ. P. 55(b), *applicable under* Fed. R. Bankr. P. 7055. Thus, "[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Chase Bank U.S.A. v. Hampson (In re Hampson),* 429 B.R. 360, 361-62 (Bankr. N.D. Ga 2009), *quoting Nishimatsu Construction Co. v. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir.1975). The result of a default is that well-pleaded factual allegations in a complaint are admitted, but facts that are not well-pleaded and conclusions of law are not. *Cotton v. Mass. Mut. Life Ins. Co.,* 402 F.3d 1267, 1278 (11th Cir. 2005).

Moreover, when, as in this proceeding, the Court must enter default judgment, Rule 55(b)(2) permits the Court to "conduct hearings . . . when, to enter or effectuate judgment, it needs to: . . . (C) establish the truth of any allegation by evidence."

The Court first considers the five applicable factors enumerated above with regard to setting aside default. (This proceeding does not involve the public interest, Factor 5.)

With regard to the willfulness of the Debtor's failure to timely respond (Factor 2), the Debtor has proffered no excuse for his failure to timely answer the complaint other than the fact that his bankruptcy counsel failed to defend the adversary proceeding in violation of his duty to do so, as this Court explained in *In re Egwim*, 221 B.R. 559, 574 (Bankr. N.D. Ga. 2003) ("Unless and until a lawyer is permitted to withdraw from representation of the chapter 7 debtor, the lawyer is obligated … to represent the client in any matter filed in the Court or related to the bankruptcy representation.").

Nevertheless, when lawyers fail to satisfy their obligations, "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 396 (1993); *see In re Bloomer*, 552 B.R. 897, 900 (Bankr. S.D. Fla. 2016) (declining to grant relief from default judgment based on attorney's inaction). Thus, Factor 2 weighs in favor of the Plaintiffs.

With regard to the Debtor's promptness (Factor 3), the Debtor waited four months before taking any action to set aside the default, which does not appear to be a reasonable time for taking action.[3] Two considerations with regard to timing, however, should be noted. First, the original deadline for filing the Plaintiff's complaint was September 28, 2015, almost two years before the Plaintiffs filed it. Second, the Court had the Plaintiffs' motion for default judgment

---

[3] *See, e.g., E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990) (default not set aside where defendant delayed about four months in bringing motion); *Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249 (4th Cir. 1967) (two and a half months' delay is not reasonable); *In re Jawish*, 260 B.R. 564, 568 (Bankr. M.D. Ga. 2000) (motion filed six months after entry of default and six days before the trial is unreasonable); *Matter of Rogers*, 160 B.R. 249, 252 (Bankr. N.D. Ga. 1993) (three weeks' delay can be reasonable).

under advisement for over three months before it scheduled a hearing on it. In these circumstances, the question of timeliness seems less important.

Factors 4 and 6 weigh in favor of the Debtor. The Plaintiffs have shown no prejudice, which generally requires a showing that evidence has been lost, destroyed, or will be more difficult to obtain, or that the Plaintiffs' costs will increase to an unfair degree as a result of setting aside the default. *See, e.g., In re Bailey,* 411 B.R. 492, 495 (Bankr. S.D. Ga. 2009). The Plaintiffs have shown no prejudice other than the fact that they will have to prosecute the lawsuit if the default is set aside. And, clearly, the Debtor faces significant financial loss if the Court enters default judgment against him.

For this Court, in the circumstances of this proceeding, the most important factor is whether the Debtor has a meritorious defense. The question is related to the issue of whether factual assertions in the complaint support entry of default judgment in favor of the Plaintiffs.

The Debtor argues that he has a meritorious defense because the complaint fails to state a claim on which can be granted under *Ashcroft v. Iqbal,* 556 U.S. 678 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and the standards of Rule 9(b) of the Federal Rules of Civil Procedure, *applicable under* Fed. R. Bankr. P. 7008, which requires a party alleging fraud "to state with particularity the circumstances constituting fraud or mistake."

The complaint involves two debts related to the business of Nice Financial Services, Inc. ("NFS"), which owned and operated check-cashing and financial services stores in the metropolitan Atlanta area. (Complaint ¶ 9, [1] at 2). The Debtor was a shareholder of NFS and was responsible for the management, supervision, and control of its business. (Complaint ¶ 10, [1] at 2). Other shareholders included Sohail Ali and one of the Plaintiffs, Irfan Merchant.

5

(Complaint ¶¶ 10, 11, [1] at 3).  The other Plaintiff, Arif Merchant made several loans to NFS and the Debtor.

According to the complaint, the Debtor proposed a transaction with the Plaintiffs, called the "Refinancing Settlement," to address payment of the loans to Arif Merchant.  (Complaint ¶ 16, [1] at 3).  Under the Refinancing Settlement:  (1) the Debtor would acquire Irfan Merchant's shares of NFS, thereby giving the Debtor majority ownership of NFS; (2) the amount of the loans would be confirmed and paid by the Debtor, with a guaranty by Trimax Financial Services, Inc., another entity owned by the Debtor; (3) NFS would be released from obligations related to the loans; and (4) the Debtor agreed "to accept any and all liabilities associated with stock ownership of NFS for the year 2012 and prior years."  (Complaint ¶¶ 16, 18, & 19, [1] at 3, 4).

The complaint identifies two documents that comprised the Refinancing Settlement: a Stock Purchase Agreement ("SPA") dated December 18, 2012, and a Promissory Note dated December 21, 2012 in favor of Arif Merchant in the principal amount of $ 1,006,485 (the "Note").  (Complaint ¶¶ 18, 19, [1] at 4).

The SPA provided for the transfer of Irfan Merchant's stock to the Debtor in consideration of $ 10 and his execution of the Note.  It also provided that, by accepting the transfer of the stock, the Debtor "accepts any and all liabilities associated with stock ownership in [NFS] for the year 2012 and prior years."  (Complaint, ¶¶ 18, 19 [1] at 4; SPA ¶ 3, 4, Exhibit "A" to Complaint, [1] at 15, 17).

The Note provided for the Debtor to pay Arif Merchant the principal amount of $1,006.485, representing the refinanced outstanding amount of the existing loans.  The Note called for the Debtor to make minimum monthly payments of $ 10,000 plus any money the

6

Debtor received from NFS in any month that exceeded the minimum monthly payment. (Complaint ¶¶ 19, 22, [1] at 4, 5); Note, Exhibit "B" to Complaint, [1] at 20, 21).

The Debtor made payments on the Note until an unspecified time in 2013. In the late spring of 2013, the complaint alleges, the Debtor posted signs at NFS' Old National Highway store that referred customers to a new location, owned by Trimax, where the Debtor had opened a business. (Complaint ¶¶ 31-33, [1] at 7).

In June 2013, another shareholder of NFS, Sohail Ali, obtained the appointment of a receiver for NFS. (Complaint ¶ 34, [1] at 7). After the appointment of a receiver, the complaint asserts, "it became apparent that the [Debtor] had improperly withdrawn over $ 420,000 from NFS."  (Complaint ¶ 35, [1] at 35).

The complaint also alleges that, after execution of the Refinancing Settlement in December 2012, the Debtor engaged in conduct to intentionally avoid payment of the Plaintiffs. Thus, the complaint alleges that the Debtor: (1) intentionally misappropriated funds from NFS for his personal use rather than properly accounting for and paying the funds to the Plaintiffs (Complaint ¶ 36, [1] at 7); (2) attempted to hide his misappropriation of funds through falsification of corporate records of NFS (Complaint ¶ 37, [1] at 8); (3) gambled more than $ 100,000 of funds instead of paying the Plaintiffs (Complaint ¶ 40, [1] at 8); and (4) transferred assets out of Trimax to another entity controlled by the Debtor in an attempt to avoid Trimax's liability on Trimax's guaranty of the Note (*Id.*).

At some unspecified time, Western Union asserted claims against Irfan Merchant based on a guaranty he had executed prior to execution of the SPA. After the Debtor confirmed that he would indemnify Irfan Merchant for any amounts paid on the guaranty, Irfan Merchant made a payment to Western Union to settle the Western Union claim. (Complaint ¶¶ 43-49, [1] at 9).

7

Based on these facts, the Plaintiffs assert that the Debtor owes $ 916,485 to Arif Merchant on the Note (Complaint ¶ 42, [1] at 8) and $ 90,000 to Irfan Merchant as the amount paid on the guaranty.

Count I of the complaint (Complaint ¶¶ 50-62, [1] at 9-11) asserts, in general and conclusory terms, that the Debtor's obligations are excepted from discharge under 11 U.S.C. § 523(a)(2)(A).  Standing alone, Count I does not state a claim for excepting the debts from discharge under § 523(a)(2).

But the Court must read Count I with reference to the more specific allegations set forth in earlier paragraphs of the complaint, which Count I incorporates.  (Complaint ¶ 50, [1] at 9). Thus read, Count I makes the following allegations:

1.  The Debtor induced the Plaintiffs to enter into the Refinancing Settlement and make the Guaranty Payment by knowingly representing that he intended to satisfy his obligations in good faith and had the ability to do so when he had no such intent or ability.

2.  The Debtor induced the Plaintiffs to enter into the Refinancing Settlement and the Guaranty Payment through intentional silence or concealment of material facts as to his lack of intent and ability to satisfy his obligations.

3.  The Debtor committed fraud by engaging in the affirmative conduct described above to intentionally prevent satisfaction of his obligations.

The first two sets of allegations state that the Debtor made agreements that he did not intend to perform and that he did not have the ability to perform.  To the extent that the representation (or silence or concealment) with regard to the Debtor's ability to satisfy his obligations is based on his financial condition, the Plaintiffs may have no claim because the

8

complaint does not allege a writing. *Lamar, Archer & Cofrin, LLP v. Appling,* ___ U.S. ___, 138 S.Ct. 1752 (2018).

Nevertheless, making a promise that a Debtor does not intend to perform provides a basis for excepting the debt from discharge. *E.g. FDS National Bank v. Alam (In re Alam),* 314 B.R. 834 (Bankr. N.D. Ga. 2004). A complaint may allege malice, intent, knowledge, and other conditions of a person's mind generally. Fed. R. Civ. P. 9(b), *applicable under* Fed. R. Bankr. P. 7009. Accordingly, Count I states a claim on which relief may be granted.

This does not mean, however, that the Court must grant a default judgment based on such allegations. As the Court explained in *FDS National Bank v. Alam (In re Alam),* 314 B.R. 834, 841-42, (Bankr. N.D. Ga. 2004):

> The Court in the exercise of its discretion will not, however, enter default judgment in a nondischargeability proceeding alleging actual fraud based on technical compliance with notice pleading rules. Unless there are specific factual allegations from which actual, subjective fraudulent intent may be inferred or Plaintiff produces evidence at a hearing that proves such intent, entry of default judgment based on actual fraud is not appropriate. The Court finds authority for this determination in the provision of Fed. R. Civ. P. 55(b)(2) (*applicable under* Fed. R. Bankr. P. 7055) that a court may conduct a hearing on a motion for default judgment if it is necessary "to establish the truth of any averment by evidence or to make an investigation of any other matter;" the Court finds this procedure necessary in order to assure that a creditor and its counsel have grounds for alleging a debtor's actual, subjective fraudulent intent under the standards of Fed. R. Bankr. P. 9011 and in view of the potential abuse of using § 523(a)(2)(A) complaints to extract settlements or reaffirmations from debtors.

9

The complaint in this proceeding does not contain specific factual allegations from which the Court may infer that the Debtor did not intend to perform his obligations under the SPA or the Note when he executed them or when Irfan Merchant made the settlement payment to Western Union.  The Court will not enter default judgment that the debts are excepted from discharge under § 523(a)(2) based on these allegations.

The affirmative misconduct that the Plaintiffs allege occurred *after* execution of the SPA and the Note.  The Court cannot infer from those facts that the Debtor did not intend to perform at the time of execution.

The Court, therefore, will not enter default judgment on Count I of the complaint.

Count II asserts exceptions to discharge under 11 U.S.C. § 523(a)(6).  It alleges that the Debtor intentionally breached the SPA and Note by intentionally refusing to honor obligations to the Plaintiffs and affirmatively acting to avoid the satisfaction of obligations due to the Plaintiffs and that the Debtor led the Plaintiffs to believe that such obligations would be satisfied prior to receiving value from the Plaintiffs.  (Complaint ¶¶ 65-66, [1] at 12).  It then asserts that the Debtor "willfully, intentionally, and maliciously took, stole, kept, misappropriated, and /or used without justification funds that should have been paid to the Plaintiffs and failed to satisfy the Promissory Note, the Indemnification Claim, or the obligations set forth in the Stock Purchase Agreement."  (Complaint ¶ 68, [1] at 12).   The Plaintiffs assert that they have suffered "damages in an amount to be proven at trial" as a direct and proximate result of "the breach" by the Debtor. (Complaint ¶ 69, [1] at 12).

The Court questions whether the Plaintiffs have asserted a sustainable claim under § 523(a)(6).  A breach of contract claim – apparently the subject of paragraphs 65 and 66 – does not ordinarily give rise to nondischargeability under § 523(a)(6).  Paragraph 68 states that the

10

Debtor improperly used funds that they should have received, but the complaint does not allege that the funds were property of the Plaintiffs that would be essential for a conversion claim that could be nondischargeable under § 523(a)(6). If the funds in question came from NFS, the complaint does not explain how the Plaintiffs – as opposed to NFS – have the right to complain about the improper use.

The Plaintiffs have not addressed how their § 523(a)(6) claim is viable in response to the Debtor's arguments that it fails to state a claim on which relief can be granted. For present purposes, the Court need not decide whether it does because the Court's concerns make it clear that the Debtor has a meritorious defense to the § 523(a)(6) claim as the Plaintiffs have pled it.

In any event, the Court will not enter default judgment on the § 523(a)(6) claim based on the allegations in Count II. In addition to its lack of clarity, its success depends on establishing the Debtor's willful and malicious intent. As the Court explained above with regard to the § 523(a)(2) claim, conclusory allegations are not sufficient to permit the Court to enter default judgment.

Based on the foregoing, the Court will deny the Plaintiffs' Motion for Default Judgment. In this regard, the Court concludes, pursuant to Fed. R. Civ. P. 55(b)(2)(B), *applicable under* Fed. R. Bankr. P. 7055, it needs to establish the truth of the Plaintiffs' allegations by evidence.

The question then is whether the Court should set aside the Debtor's default. The Court will do so for two reasons.

First, the Court concludes that the default should be set aside for cause under Rule 55(c). Although the Debtor's default is willful and he did not move as promptly as he could have to set it aside, his willfulness is mitigated to some extent by his bankruptcy counsel's failure to represent him in this proceeding, and his lack of promptness is mitigated to some extent by the

11

facts that this proceeding did not begin until almost two years after the initial deadline for its commencement expired and that the Court did not schedule a hearing on the motion for entry of default for over three months after the motion for default was filed. Setting aside the default will not prejudice the Plaintiffs, whereas entering default judgment could result in significant loss to the Debtor.

Most critically, the fact that the Court cannot grant default judgment based on the allegations of the complaint establishes that the Debtor has a meritorious defense. Setting aside the default effects the preference of the federal judiciary to resolve disputes on the merits.

Second, the Court has concluded that it cannot enter default judgment without evidence to establish the truth of the Plaintiffs' allegations. This being the case, the Court concludes that the best way to do this is to proceed with litigation in the ordinary course to permit the parties to fully develop the issue.

A remaining question is the request of the Plaintiffs that the Court require the Debtor to pay their attorney's fees incurred in obtaining the entry of default and in filing the motion for entry of default. (Plaintiffs' Opposition to Motion to Set Aside Default ¶ 34 [12], at 13-14). In the circumstances of this case, it is appropriate to require the Debtor to pay those attorney's fees. *See Coon v. Grenier,* 867 F.2d 73 (1st Cir. 1989). Counsel for Plaintiffs may file a request for attorney's fees in this adversary proceeding within 30 days from the date of entry of this Order, and Debtor may file any response within 30 days thereafter. The Court will consider the request and any response and determine whether an evidentiary hearing is required.

The Plaintiffs also requested that the Court grant leave to amend their complaint if the Court declined to grant their motion for default judgment based on any finding that the complaint fails to state a claim. (Plaintiffs' Opposition ¶ 34, [12] at 14). Although the Court has not

concluded that the complaint fails to state a claim, the Plaintiffs should have the opportunity to determine whether they want to amend their complaint in view of this Order. Accordingly, the Court grants leave to the Plaintiffs to file an amendment to their complaint within 30 days from the date of this Order.

Based on, and in accordance with the following, it is hereby **ORDERED** as follows:

1. Plaintiffs' Motion for Entry of Default Judgment [6] is **DENIED.**

2. Debtor's Motion to Set Aside Entry of Default [9] is **GRANTED.**

3. The request of the Plaintiffs for attorney's fees [12 at ¶ 34] is **GRANTED.** Plaintiffs' counsel may file a request in this adversary proceeding for attorney's fees incurred by the Plaintiffs in connection with obtaining entry of default and filing their motion for entry of default judgment within 30 days of the date of this Order. The Debtor may respond to the request within 30 days of the filing and service of such request. The Court will consider the request and any response and determine whether any evidentiary hearing is necessary.

4. The Plaintiffs may amend their complaint within 30 days of the date of this Order.

5. Counsel for the parties shall confer with regard to a Rule 26(f) conference and the submission of a scheduling order. Either party may request a status conference if the Court's assistance with regard to discovery and scheduling would be helpful.

**THIS ORDER HAS NOT BEEN PREPARED FOR PUBLICATION AND IS NOT INTENDED FOR PUBLICATION.**
**[END OF ORDER]**

**Distribution List**

Herbert C. Broadfoot
Buckhead Centre
2964 Peachtree Rd NW, Suite 555
Atlanta, GA  30305
Leslie M. Pineyro
Jones & Walden

21 Eighth Street NE
Atlanta, GA  30309