## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | CHAPTER 7 |
| | : | |
| AKBAR BALUBHAI ALI AND ANILA S. | : | |
| MAMDANI, | : | CASE NO. 15-61641-pwb |
| | : | |
|     Debtors. | : | |
| | : | |
| ARIF AND IRFAN MERCHANT, | : | |
| | : | ADVERSARY COMPLAINT |
|     Plaintiffs, | : | |
| v. | : | CASE NO. 17-05230-pwb |
| | : | |
| AKBAR BALUBHAI ALI aka Tony Ali, | : | |
| | : | |
|     Defendant. | : | |

## AMENDED COMPLAINT OBJECTING TO AND SEEKING TO
## DETERMINE DISCHARGEABILITY OF DEBTS

Plaintiffs Arif and Irfan Merchant (the "**Plaintiffs**"), by and through their undersigned counsel, file this *Amended Complaint Objecting to and Seeking to Determine Dischargeability of Debts* (the "**Amended Complaint**"). This Amended Complaint incorporates each allegation, count, claim, request for damages, and all other supporting evidence and relates back to the original *Complaint Objecting to and Seeking to Determine Dischargeability of Debts* dated August 27, 2017 (the "**Original Complaint**"). In support thereof, the Plaintiffs state as follows:

### JURISDICTION AND PARTIES

1.    Defendant Akbar Balubhai Ali aka Tony Ali (the "**Defendant**" or "**Debtor**") is a debtor in the above captioned bankruptcy case (the "**Bankruptcy Case**").

2.    The Plaintiffs are residents of Georgia and creditors of the Debtor.

3.    This adversary proceeding (the "**Adversary Proceeding**") is commenced by the Plaintiffs under Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure and pursuant

to 11 U.S.C. § 523 to object to and determine the dischargeabilility of debts owed to the Plaintiffs by the Defendant.

4.      This is a core proceeding pursuant to 28 U.S.C. §157.

5.      This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 & 1334.

6.      Venue of this proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      Other parties have already filed complaints to determine the dischargeability of debts owed by the Defendant to such parties. Incident to such complaints, the Defendant has already agreed to the entry of judgments that are nondischargeable in accordance with 11 U.S.C. § 523(a) due to the misconduct of the Defendant. *See Great Am. Insur.  Co. v. Akbar Balubhai*, Adv. Pro. No. 16-05001, Doc. No. 5 (Feb. 22, 2016); *All Bus. Corp. v. Akbar Balubhai*, Adv. Pro. No. 15-05377, Doc. No. 5 (Nov. 16, 2015); *Western Union Fin. Serv's, Inc. v. Akbar Balubhai*, Adv. Pro. No. 15-05371, Doc. No. 7 (Oct. 27, 2015).

8.      The Original Complaint initiating the Adversary Proceeding was filed on or before the deadline of August 28, 2017, for objecting to the dischargeability of debts due by the Defendant to the Plaintiffs. On July 25, 2018, the Court entered a certain Order on Plaintiff's Motion for Default Judgment [6] and Defendant's Motion to Set Aside Default [12] [Doc. No. 14] (the "**Order**") dated July 24, 3018, in which the Court authorized the Plaintiffs to amend the Original Complaint within 30 days of the date of the Order. This Amended Complaint is filed within 30 days of the date of the Order and relates back to the date of the filing of the Original Complaint.

## GENERAL ALLEGATIONS

2

### A. Nice Financial Services, Inc.

9.     At all times relevant hereto, Nice Financial Services, Inc. ("**NFS**") owned and operated certain check cashing and financial services stores in the metro Atlanta area.

10.     NFS also owned certain property located at 6380 Tara Blvd., Jonesboro, Georgia 30236 (the "**Property**").

11.     At all times relevant hereto, the Defendant was a shareholder of NFS and responsible for management, supervision, and control of the business of NFS.

12.     Another shareholder of NFS, Sohail Ali, has already filed a dischargeability complaint against the Defendant asserting claims arising from the misconduct of the Defendant with regard to NFS. *See Sohail Ali v. Akbar Balubhai*, Adv. Pro. No. 15-61641-pwb, Doc. No. 1 (Sept. 28, 2015). The Defendant agreed to the entry of a judgment with regard to such complaint due to the misconduct of the Defendant.

13.     At all times relevant hereto until the entry of the Refinancing Settlement (as defined herein), Irfan Merchant was a shareholder of NFS with an interest in Certificate No. 2 of NFS (the "**Stock**").

14.     Prior to the entry of the Refinancing Settlement, Arif Merchant made several loans (the "**Loans**") to NFS and the Defendant based on representations by the Defendant that: a) the Defendant intended to and had the ability to repay the Loans; and b) the funds from the Loans would be used for the benefit of NFS.

### B. Refinancing Settlement Incident to Stock Purchase Agreement

15.     In late 2012, the Defendant discussed an arrangement with the Plaintiffs that would purportedly address the outstanding liability with regard to the Loans. The Defendant proposed a settlement to the Plaintiffs incident to which: a) the Defendant would obtain majority

ownership of NFS by acquiring the Stock from Irfan Merchant; and b) the Loans would be subject to an extension, renewal or refinancing incident to which the outstanding amount of the Loans would be confirmed, the confirmed amount would be due by the Defendant and guaranteed by an entity owned or controlled by the Defendant, and NFS would be released from obligations related to the Loans (collectively, the "**Refinancing Settlement**"). The Defendant assured the Plaintiffs multiple times–prior to entering the Refinancing Settlement—that the Defendant would satisfy the obligations to the Plaintiffs arising under the Refinancing Settlement.

16.     The Plaintiffs entered the Refinancing Settlement and Agreements based on the representations by the Defendant to the Plaintiffs that the Defendant would satisfy obligations related to NFS and that the Defendant: a) intended to satisfy obligations to the Plaintiffs in good faith; and b) had the ability to do so. Unbeknownst to the Plaintiffs at the time, upon information and belief, the Defendants did not actually intend to satisfy such obligations at the time that the Defendant entered into the Refinancing Settlement. Upon information and belief, the Defendant deliberately and intentionally misrepresented to the Plaintiffs that the Defendant: a) intended to fully perform in good faith under the Refinancing Settlement; and b) had the financial ability to satisfy obligations arising thereunder in order to induce the Plaintiffs to provide value incident to the Refinancing Settlement.

17.     Upon information and belief, the Defendant falsely and fraudulently induced the Plaintiffs to provide value under false pretenses pursuant to the Refinancing Settlement.

18.     In reliance on the representations by the Defendant that the Defendant intended to perform under the Refinancing Settlement and to document a portion of the Refinancing Settlement, the Defendant, Plaintiff Irfan Merchant, and NFS entered into a Stock Purchase

4

Agreement dated December 18, 2012 (the "**Stock Purchase Agreement**") incident to which the Defendant: a) agreed to accept any and all liabilities associated with stock ownership of NFS for the year 2012 and prior years, *see* Stock Purchase Agreement, ¶ 4; and b) would obtain the Stock upon the satisfaction of certain terms and conditions. A true and correct copy of the Stock Purchase Agreement is attached as **Exhibit A** hereto.

19.     As one of the conditions to the Stock Purchase Agreement and a key portion of the Refinancing Settlement, the Defendant promised in writing to pay Plaintiff Arif Merchant the principal amount of $1,006,485.00 pursuant to a certain Promissory Note dated December 21, 2012 (the "**Promissory Note**"). The amount of the Promissory Note represented the refinanced outstanding amount of the Loans. A true and correct copy of the Promissory Note is attached as **Exhibit B** hereto. The Promissory Note is a clear written representation by the Defendant that the Defendant promised to satisfy the obligations due to the Plaintiffs. Upon information and belief, the Defendant did not: a) enter the Promissory Note with the intent to fully perform; and b) actually intend to fully satisfy the Promissory Note.[1]

20.     As a part of the Refinancing Settlement and in exchange for obligations set forth in the Promissory Note, Arif Merchant and NFS entered a certain Satisfaction, Waiver, and Release of Indebtedness dated December 21, 2012 (the "**Release**"), incident to which certain indebtedness due by NFS was released.

21.     The Promissory Note provides that the Defendant shall procure a life insurance policy (the "**Insurance Policy**") and secure the Promissory Note with a Deed to Secure Debt on the Property (the "**Security Deed**"). Despite such obligations being key components of the

---

[1] As part of the Refinancing Settlement, Trimax Financial Services, Inc. ("**Trimax**"), a separate entity solely owned by the Defendant, entered a certain guaranty of the Promissory Note. After the entry of the Refinancing Settlement, the Defendant would deplete the assets of Trimax to ensure that such guaranty was worthless.

Refinancing Settlement, the Defendant failed to provide the Plaintiffs with any evidence that the Defendant procured either the Insurance Policy or the Security Deed.

22.     The Promissory Note also specifically provides that the Defendant shall pay Arif Merchant: a) minimum monthly payments of $10,000.00; and b) any amount of money Defendant received in any given month from NFS that exceeds the minimum monthly payment. Accordingly, any amount of money that the Defendant received in any given month from NFS that exceeded the minimum monthly payment should have been held for the benefit of and paid to Arif Merchant as a payment towards the satisfaction of the Promissory Note.

23.     After the entry of the Promissory Note, the Defendant failed to fully satisfy the payment obligations arising under the Promissory Note.

24.     Upon information and belief, the Defendant did not intend to satisfy the obligations arising from the Refinancing Settlement upon entering into and obtaining the benefit of the Refinancing Settlement and, after obtaining benefit from the Plaintiffs, intentionally acted to avoid the satisfaction of obligations arising from the Refinancing Settlement.

25.     Upon information and belief, the Defendant deliberately and intentionally made false representations in entering the Stock Purchase Agreement and the Promissory Note with the intent and purpose of deceiving the Plaintiffs into believing that the Defendant would satisfy the Promissory Note and other obligations arising from the Refinancing Settlement in good faith.

26.     At all times material hereto leading up to the entry of the Refinancing Settlement, including the Stock Purchase Agreement and Promissory Note, the Defendant represented that he intended and had the ability to perform under the Refinancing Settlement and satisfy the obligations arising from the Stock Purchase Agreement and Promissory Note in good faith.

27.    At all times material hereto, the Defendant was aware that the Refinancing Settlement, including the Stock Purchase Agreement and Release, were entered based on representations by the Defendant that the obligations arising from the Stock Purchase Agreement and Promissory Note would be satisfied in good faith.

28.    Upon information and belief, notwithstanding representations by the Defendant that obligations arising under the Refinancing Settlement, including the Promissory Note and Stock Purchase Agreement, would be satisfied, the Defendant: a) entered the Refinancing Settlement, including the Promissory Note and Stock Purchase Agreement, and promised to satisfy the underlying obligations without the intent to actually fully perform such obligations; b) knew that representations by the Defendant to the contrary were false; c) deliberately and intentionally failed to disclose to the Plaintiffs that he did not intend to satisfy obligations arising from the Refinancing Settlement, including the Promissory Note and Stock Purchase Agreement, while obtaining the benefit of the Stock Purchase Agreement, Promissory Note, and Release; and d) after obtaining the benefits arising thereunder, affirmatively acted to avoid the full satisfaction of obligations arising from the Refinancing Settlement, including the Stock Purchase Agreement and Promissory Note.

29.    Upon information and belief, the Defendant acted in bad faith in entering the Refinancing Settlement, including the Stock Purchase Agreement and Promissory Note, without the intent to fully satisfy the obligations arising from the Refinancing Settlement, including the Promissory Note and Stock Purchase Agreement, and by affirmatively acting to avoid the satisfaction of obligations arising from the Refinancing Settlement, including the Promissory Note and Stock Purchase Agreement.

**C. Course of Conduct by Defendant to Intentionally Avoid Satisfaction of Obligations
After Obtaining Benefit from Plaintiffs**

30.    The intent of the Defendant to not fully satisfy obligations to the Plaintiffs is

evidenced by the conduct of the Defendant after the entry of the Refinancing Settlement. The

Defendant initially caused certain payments with regard to the Promissory Note to be made to

the Plaintiffs to create the false appearance that the Promissory Note would be satisfied while the

Defendant obtained the benefit of the Release and gained control of NFS and the Property. After

the Defendant obtained the benefits under the Refinancing Settlement, however, the payments on

the Promissory Note stopped in 2013 in conjunction with escalating efforts by the Defendant to

avoid satisfaction of the obligations of the Defendant to the Plaintiffs. As part of such affirmative

efforts, the Defendant began moving assets to avoid collection and engaged in conduct to avoid

any further satisfaction of the obligations to the Plaintiffs.

31.    As part of the efforts by the Defendant to avoid collection of the obligations due

to the Plaintiffs, the Defendant has made false and fraudulent statements concerning the finances

of NFS and the ability of the Defendant to satisfy the Promissory Note, including, among other

things, repeated denials that the Defendant was using funds of NFS for personal use without

submitting payments for obligations arising under the Stock Purchase Agreement and the

Promissory Note.

32.    Upon information and belief, in late-Spring of 2013, the Defendant posted signs at

the most lucrative and consistent location of NFS on Old National Highway that referred

customers to a new location at 5015 Old National Highway that was not operated by NFS.

33.    The location at 5015 Old National Highway had been recently opened by the

Defendant and was owned by Trimax, which is solely owned by the Defendant.

34. Upon learning of the fraudulent threats of the Defendant to close the Old National Highway location of NFS on June 30, 2013, Sohail Ali, as a shareholder of NFS, filed an emergency motion on June 28, 2013, seeking, among other relief: a) a temporary restraining order to preclude the Defendant from causing further harm to NFS; and b) the appointment of a receiver.

35. Upon information and belief, after the appointment of a receiver for NFS incident to the motion by Sohail Ali, it became apparent that the Defendant had improperly withdrawn over $420,000.00 from NFS.

36. Upon information and belief, in breach of payment obligations to the Plaintiffs, the Defendant intentionally took, converted, stole, or misappropriated funds from NFS for personal use rather than properly accounting for and paying such funds to the Plaintiffs.

37. Upon information and belief, in an effort to hide his misappropriation of funds, the Defendant falsified or directed the falsification of corporate records of NFS.

38. Upon information and belief, the Defendant acted in bad faith by affirmatively acting to avoid the payment of obligations to the Plaintiffs in refusing to account for or properly direct the missing funds of NFS that should have been paid to the Plaintiffs.

39. Upon information and belief, the Defendant acted in bad faith by affirmatively acting to avoid the payment of obligations to the Plaintiffs by submitting checks to the Plaintiffs that could not clear and refusing to issue proper payments to satisfy obligations due to the Plaintiffs.

40. Upon information and belief, the Defendant acted in bad faith by affirmatively acting to avoid the payment of obligations to the Plaintiffs by: a) gambling more than $100,000 of funds at casinos rather than using such funds to help satisfy obligations to the Plaintiffs; b)

transferring assets out of Trimax or causing such assets to be transferred to another entity owned or controlled by the Defendant in an attempt to avoid the guaranty of the Promissory Note executed by Trimax; and c) otherwise using funds inappropriately rather than using such funds to satisfy obligations to the Plaintiffs.

41.    Upon information and belief, the Defendant has continued to act to avoid the payment of obligations to the Plaintiffs and has actually indicated that he was willing to pay all obligations of creditors other than the specific obligations due to the Plaintiffs.

42.    Due to the affirmative misconduct of the Defendant to avoid the satisfaction of obligations to the Plaintiffs, the Defendant has failed to fulfill his obligation to satisfy the Promissory Note that currently has an outstanding principal balance of $916,485.00 (the "**Loan Refinancing Claim**").

### D. Intentional Failure to Satisfy Obligations Associated with Stock Ownership of NFS

43.    As a shareholder of NFS, Irfan Merchant executed a certain guaranty (the "**Guaranty**") prior to the entry of the Stock Purchase Agreement.

44.    Incident to the entry of the Refinancing Settlement, the Defendant represented that the Defendant would satisfy obligations related to NFS such as the Guaranty.

45.    The obligation of the Defendant to satisfy obligations related to NFS such as the Guaranty arises from the Stock Purchase Agreement in which the Defendant agreed to accept any and all liabilities associated with stock ownership of NFS. *See* Stock Purchase Agreement ¶ 4. Unbeknownst to the Plaintiffs at the time of the entry of the Stock Purchase Agreement, upon information and belief, the Defendant entered the Stock Purchase Agreement without the intent to fully satisfy obligations related to NFS such as the Guaranty.

46.     After the entry of the Stock Purchase Agreement, Western Union asserted claims against Irfan Merchant arising from the Guaranty for obligations due by NFS in 2012 or prior years.

47.     In response to the demand by Western Union, the Defendant represented that the Defendant would indemnify Irfan Merchant for any amounts paid incident to the Guaranty. Unbeknownst to the Plaintiffs at the time, upon information and belief, the Defendant did not actually intend to indemnify Irfan Merchant.

48.     In reliance on the indemnification by the Defendant and the confirmation of such indemnification, Irfan settled the claims asserted by Western Union by making a payment in the amount of $90,000.00 (the "**Guaranty Payment**").

49.     Irfan sought reimbursement from the Defendant for the Guaranty Payment; however, the Defendant refused to pay any amount of the obligation of the Defendant to satisfy amounts paid incident to the Guaranty (the "**Indemnification Claim**"). Upon information and belief, the Defendant obtained the benefit of the Guaranty without the intent to perform under the Guaranty.

## COUNT I
### Exception to Discharge – 11 U.S.C. § 523(a)(2)

50.     The Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 49 above as if fully set forth herein.

51.     Section 523(a)(2) of the Bankruptcy Code provides, in relevant part, that the Defendant may not be discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting debtor's or an insider's financial condition."

52.     The Defendant induced the Plaintiffs to enter into the Refinancing Settlement and make the Guaranty Payment, which provided the Defendant with money, property, services or an extension, renewal, or refinancing of credit, by knowingly representing that the Defendant intended to fully satisfy the obligations of the Defendant in good faith and that the Defendant had the ability to perform event though the Defendant had no such intent or ability. Upon information and belief, the Defendant did not in fact intend to fully satisfy the obligations of the Defendant to the Plaintiffs when such obligations were incurred.

53.     The Defendant perpetuated a fraud on the Plaintiffs by knowingly making false and fraudulent statements to the Plaintiffs to induce the Plaintiffs to enter the Refinancing Settlement and make the Guaranty Payment that the Defendant knew were false at the time that the Defendant made the statements.

54.     In addition to affirmative misrepresentations to Plaintiffs concerning the intent and ability of the Defendant to satisfy the Promissory Note and the Indemnification Claim, the Debtor: a) induced the Plaintiffs through intentional silence or concealment of a material facts as to the Defendant's lack of intent and ability to satisfy the obligations to the Plaintiffs; and b) engaged in affirmative conduct to intentionally prevent the satisfaction of the obligations of the Defendant to the Plaintiffs.

55.     The Defendant, through actual fraud, false pretenses and/or false representations as to the intent of the Defendant to satisfy the Stock Purchase Agreement, Promissory Note, and Indemnification Claim intentionally and deliberately induced the Plaintiffs to provide money, property, services or an extension, renewal, or refinancing of credit that the Defendant knew would not be repaid or satisfied.

56.     The Plaintiffs reasonably, actually, and justifiably relied on the Defendant's misrepresentations and false pretenses in providing value to the Defendant—at a time when the Defendant did not actually intend to fully perform obligations arising thereunder—that would not have otherwise been transferred to or exchanged with the Defendant.

57.     After obtaining value from the Refinancing Settlement, the Defendant took part in a course of conduct to preclude the Plaintiffs from recovering the value of the Promissory Note and Indemnification Claim.

58.     The Plaintiffs have sustained and incurred out of pocket financial losses and damages as the direct and proximate result of the fraudulent conduct of the Defendant in the principle amount of at least $916,485.00 with regard to the Loan Refinancing Claim and continue to suffer damages as a result of such conduct.

59.     With regard to the Indemnification Claim, Irfan Merchant has sustained and incurred additional out of pocket financial losses and damages as the direct and proximate result of the fraudulent conduct of the Defendant in the principle amount of at least $90,000.00 and continues to suffer damages as a result of such conduct.

60.     Said debts arose from a false statement, fraud, or false pretense made or created by the Defendant with intent to deceive.

61.     A promise that a debtor does not intend to perform may provide a basis for excepting from discharge the debt resulting from such promise. Under the circumstances, the conduct of the Defendant constitutes a violation of section 523(a)(2)(A) of the Bankruptcy Code and, therefore, renders any and all debts due and owing to the Plaintiffs non-dischargeable.

62.     The conduct of the Defendant in refusing to acknowledge the debts due to the Plaintiffs as non-dischargeable constitutes stubborn litigiousness, bad faith, or has caused the

13

Plaintiffs unnecessary trouble and expense and, as such, the Plaintiffs are entitled to an award of litigation expenses under O.C.G.A. § 13-6-11.

**COUNT II**
**Exception to Discharge – 11 U.S.C. § 523(a)(6)**

63.     The Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 62 above as if fully set forth herein.

64.     Section 523(a)(6) of the Bankruptcy Code provides, in relevant part, that the Defendant may not be discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

65.     The Defendant entered into the Refinancing Settlement, including the Promissory Note and Stock Purchase Agreement, without the intent to fully perform. The entry of the Refinancing Settlement, including the Promissory Note and Stock Purchase Agreement, by the Defendant without the intent to fully perform constitutes willful and malicious conduct by the Defendant. Incident to such conduct, the Defendant intentionally breached the Stock Purchase Agreement and Promissory Note by, among other things, intentionally refusing to honor obligations to the Plaintiffs and affirmatively acting to avoid the satisfaction of obligations due to the Plaintiffs.

66.     The Defendant led the Plaintiffs to believe that the Defendant would fully satisfy the Promissory Note, the Indemnification Claim, and the obligations set forth in the Stock Purchase Agreement even though the Defendant did not in fact intend to satisfy such obligations when such obligations were incurred by the Defendant.

67.     The Defendant knew or should have known that the conduct of the Defendant would cause injury to the Plaintiffs.

14

68.    In an attempt to avoid payment to the Plaintiffs with regard to the Promissory Note, the Indemnification Claim, or the obligations set forth in the Stock Purchase Agreement, the Defendant willfully, intentionally, and maliciously took, stole, kept, misappropriated, and/or used without justification funds that should have been paid to the Plaintiffs.

69.    As a direct and proximate result of the conduct of the Defendant, the Plaintiffs have suffered damages in an amount to be proven at trial that the Defendant knew or should have known would be incurred by the Plaintiffs.

70.    The conduct of the Defendant outlined herein constitutes stubborn litigiousness, bad faith, or has caused the Plaintiffs unnecessary trouble and expense and, as such, the Plaintiffs are entitled to an award of litigation expenses under O.C.G.A. § 13-6-11.

71.    The actions of the Defendant showed: a) willful misconduct, malice, fraud, wantonness, oppression or an entire want of care that would raise the presumption of conscious indifference to the consequences; and b) specific intent to cause harm to the Plaintiffs. As a direct and proximate result, the Plaintiffs are entitled to an award of punitive damages, not limited to any statutory amount.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an Order:

1.    determining and setting the amount of the debts owed by the Defendant to the Plaintiffs;

2.    determining that the debts owed by the Defendant to the Plaintiffs are non-dischargeable pursuant to 11 U.S.C. § 523;

3.    entering a judgment against the Defendant for monetary damages in favor of the Plaintiffs in the amount of $916,485.00 with regard to the Loan Refinancing Claim and in the

amount of $90,000.00 with regard to the Indemnification Claim, as well as interest, costs, and attorneys' fees to the extent necessary and appropriate; and

4.      granting such other and further relief as the Court deems proper.

Respectfully submitted, this 23rd day of August, 2018.

HERBERT C. BROADFOOT II, P.C.

_____ */s/ Herbert C. Broadfoot II* _____
Herbert C. Broadfoot II
Georgia Bar No. 083750
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0058
bert@hcbroadfootlaw.com

*Counsel for the Plaintiffs*

Exhibit A

STATE OF GEORGIA
COUNTY OF _Gwinnett_

## STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT (the "Agreement") is made and entered into this _18th_ day of _DECEMBER_, 2012, by and between Akbar "Tony" Ali, a resident of Georgia (the "Buyer"), Irfan Merchant, a resident of Georgia (the "Seller"), and Nice Financial Services, Inc., a Georgia corporation (the "Company").

## W I T N E S S E T H:

WHEREAS, the Seller owns Three Hundred Seventy-Five (375) shares of the issued and outstanding shares of common stock of the Company, $1.00 par value, represented by Certificate No. 2 (the "Stock"); and

WHEREAS, the Buyer desires to purchase from the Seller, and the Seller desires to sell to the Buyer, all of his Stock in the subject company, Nice Financial Services, Inc., based upon the terms and conditions set forth herein.

AND WHEREAS, the Board of Directors of Nice Financial Services, Inc. have approved of this Stock Purchase Agreement and the transfer of the subject stock, the same of which is evidenced by the execution of this agreement by its President;

NOW, THEREFORE, for and in consideration of the premises and the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which is hereby acknowledged by all of the parties hereto, the parties hereto agree as follows:

1.    **Prior Agreements.**

This Agreement supersedes that portion of any other understanding or agreement, whether written or oral, among the parties hereto with respect to the vesting, transfer, purchase and sale of the Stock in the Company.

2.    **Transfer of Stock.**

Upon the terms and subject to the conditions set forth in this Agreement, including the execution of that Promissory Note from Akbar "Tony" Ali to Arif Merchant (a copy of which is attached hereto as "Exhibit A"), the Seller hereby agrees to sell, convey, assign, transfer and deliver the Stock to the Buyer, and the Buyer hereby agrees to so purchase the Stock from the Seller.

3.    **Payment for Stock.**

In consideration of the sale and transfer of the Stock, the Buyer hereby agrees to pay to the Seller the sum of $10.00 Dollars ($10.00), to fully satisfy the payment terms set forth in that certain Unsecured Promissory Note (collectively, the "Purchase Price") of even date herewith made by Buyer in favor of Seller's brother, Arif Merchant, and for other good and valuable consideration set forth herein. Seller acknowledges and agrees that the Purchase Price represents a full and fair consideration for the Stock.

4.    **Delivery of Certificates and Documents.**

Upon receipt of the Purchase Price from Buyer (including a fully executed copy of the Promissory Note executed by Akbar "Tony" Ali to Arif Merchant on even date herewith), the Seller shall deliver to the Buyer all certificates representing the Stock (if any), duly endorsed by the Seller; it being the intent of Seller to transfer all of his right, title and interest in the subject stock to Buyer. In addition, the Seller agrees to transfer to the Buyer any and all information, documents, or other materials of any type or description that it has or may have in its possession relating to the business of the Company.    By accepting the transfer of stock, Buyer accepts any and all liabilities associated with stock ownership in Nice Financial Services, Inc. for the year 2012 and prior years.

5.    **Release.**

Upon the Seller's execution of this Agreement and his receipt of the Purchase Price from Buyer, Seller shall release and forever discharge the Company and its officers, directors, shareholders, employees, and agents from any and all claims, actions, causes of actions, suits, judgments, debts, obligations, liabilities, charges, promises, agreements, damages, demands, and expenses (including attorneys' fees and costs) of any kind whatsoever, at law or in equity, matured or not matured, known or unknown, existing at any time to the date of this Agreement, which relate to the Seller's ownership of the Stock or his sale and transfer of the Stock to the Buyer hereunder. This Release notwithstanding, the Seller may pursue any and all remedies afforded to him by this contract or by law in the event the Buyer defaults on his payment obligations to Arif Merchant which are set forth in the attached Promissory Note.

Likewise, by his execution of this agreement, Buyer hereby releases and forever discharges the Seller and his heirs and assigns from any and all claims, actions, causes of action, suits, judgments, debts, obligations, liabilities, charges, promises, agreements, damages, demands and expenses (including attorney's fees and costs) of any kind whatsoever, at law or in equity, matured or not matured, know or unknown, existing at any time to the date of this Agreement, which related to Buyer's ownership or purchase of the subject Stock from Seller hereunder.    This Release notwithstanding, the Buyer may pursue any and all remedies afforded to him by this contract or by law in the event Seller defaults on any obligation set forth herein or his failure to execute any document necessary to effectuate the transfer of the subject stock.

6.    Rights of Seller in the Stock.

Until the sums set forth in the Promissory Note from Akbar "Tony" Ali to Arif Merchant have been paid in full, Seller shall be given a security interest in the stock being transferred.    The same shall be evidenced by a UCC 1 financing statement which shall be duly recorded with the Clerk of Superior Court in the County of Buyer's residence.    Upon receipt of the entire amounts due and owing by Akbar "Tony" Ali" to Arif Merchant, the Seller shall have no further rights or interest in the Stock or the Company and shall cause his UCC 1 Financing Statement to be marked as satisfied and cancelled of record.

7.    Representations and Warranties of Seller.

As an inducement to the Buyer and the Company to execute and deliver this Agreement, the Seller hereby represents and warrants to the Buyer and the Company the following:

A.    Stock. The Stock comprises three hundred seventy-five (375) shares of the issued and outstanding common stock of the Company, $1.00 par value. All of such shares are duly authorized and validly issued, fully paid, and nonassessable. All of such shares are owned beneficially and of record by the Seller, free and clear of all encumbrances, liens, security interests, claims and charges. The Seller has not granted any option or right in any person to acquire any interest in the Stock.

B.    Valid and Binding Obligation. The Seller hereby acknowledges that this Agreement constitutes the valid, legal, binding, and enforceable agreement of the Seller, which the Seller has entered into knowingly and freely with the Buyer and the Company.

C.    No Future Encumbrance. The Seller warrants that he shall not encumber, assign, transfer, sell, pledge, lien, mortgage, give as security, or otherwise undertake or permit any other action which would restrict or affect his rights or ability to transfer the Stock free and clear of any adverse claim, obligation or encumbrance of any kind, so long as Buyer is not in default under the Unsecured Promissory Note given to Arif Merchant.

D.    No Further Representations. No further representations or warranties other than those expressly stated herein are made by Buyer or Seller.

8.    No Further Due Diligence. Buyer and Seller hereby acknowledge that they have conducted all due diligence which they believe is necessary and advisable and freely and voluntarily waive any further opportunity to obtain or conduct further due diligence of any kind from any person or entity. Neither Buyer nor Seller, nor any other person or entity has made any representation regarding (i) the value of the Stock, (ii) the assets and/or liabilities of the Company or (iii) the advisability of this transaction.

9.    Governing Law.

This Agreement and all transactions contemplated by this Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Georgia without regard to principles of conflicts of laws.

    10.    **Preparation of Agreement.**

This Agreement shall not be construed more strongly against any party regardless of who is responsible for its preparation.

**SELLER:**

Date: 12-18-2012

IRFAN MERCHANT

**BUYER:**

Date: 12-18-2012

AKBAR "TONY" ALI

**COMPANY:**
NICE FINANCIAL SERVICES, INC.

Date: 12-18-2012

BY:   AKBAR "TONY" ALI
It's _PRESIDENT & CEO_

4

Exhibit B

## PROMISSORY NOTE

**$1,006,485.00**                                                    Atlanta, Georgia
Principal Amount                                              December 21, 2012

     FOR VALUE RECEIVED, the undersigned, AKBAR "TONY" ALI (hereinafter referred to as "Maker"), unconditionally promises to pay to the order of ARIF MERCHANT (hereinafter, together with any holder hereof, referred to collectively as "Holder"), the principal sum of One Million Six Thousand Four Hundred Eighty-Four and no/ 100 dollars ($1,006,485.00), together with interest on any unpaid principal balance from the date hereof at the rate of zero percent (0%) per annum as hereinafter provided. Maker shall pay to Holder monthly principal payments of at least Ten Thousand and 00/100 dollars ($10,000.00), which payments shall be payable on the first day of each month beginning the month following the execution of this Unsecured Promissory Note (with the final payment being in the amount of the then-remaining principal) until such time as the principal balance has been paid in full.    Maker specifically agrees, however, that he shall pay over to Holder any net amount of money he receives in any given month as compensation (whether wages, management fees, stock dividends etc.) from Nice Financial Services, Inc. which exceeds the minimum monthly payment due in the amount of $10,000.00.    The additional sums shall be paid to Holder on the 1st of the month following Maker's receipt of the same, along with a copy of the check or other document evidencing the compensation received by him from Nice Financial Services, Inc.,    Maker shall provide to Holder at least once per quarter an accounting of all compensation received by him from Nice Financial Services, Inc..

     Payments due hereunder shall be payable in lawful money of the United States to Holder at Holder's address hereinafter provided, or at such other place as Holder may designate in writing to Maker from time to time. Upon receipt, all payments shall be applied first to the payment of interest accrued and unpaid hereunder to and including the date of receipt of such payment, and then to the payment of the principal hereof. The entire unpaid balance of this Unsecured Promissory Note, or partial payments thereof, may be paid at any time, together with interest to the date of payment of said prepayment, without penalty.

     Maker shall procure a term life insurance policy, in the face amount of $1,000,000.00, which policy shall name Holder as the sole primary beneficiary until such time as all obligations set forth herein are satisfied. Maker may satisfy this obligation by naming Holder as beneficiary of a current policy of life insurance owned by the Maker up to $1,000,000.00. Holder, not Maker, shall be solely responsible for the timely payment of all premiums on such life insurance policy. The inability of Maker to obtain or maintain such life insurance policy, or the cancellation thereof, through no fault of Maker, shall not constitute an Event of Default under this Unsecured Promissory Note.

     Maker agrees that he shall secure this note with a Deed to Secure Debt on the real property located at 6380 Tara Blvd., Jonesboro, Georgia 30236 within five (5) days of his receiving his one half (1/2) ownership in the same. Maker agrees to use his best efforts to timely procure a Deed to

1 of 3

X:Cert\Litigation\Various\NYB misc\Maker.doc

his one half (1/2) interest in the subject property once this note has been executed.

Upon the happening of any one or more of the events of default ("Events of Default") hereinafter set forth, the entire principal sum of this Unsecured Promissory Note, together will all accrued interest thereon, at the option of Holder and upon written notice to Maker (but without demand for payment, notice of nonpayment, presentment, notice of dishonor, protest, notice of protest, or any other notice, all of which are hereby expressly waived by Maker), shall be and become immediately due and payable and may be collected forthwith, and Holder shall thereupon be entitled to exercise immediately any and all rights and remedies for the collection of such indebtedness available to Holder at law, in equity or by virtue of any instrument, contract or agreement securing repayment thereof. These Events of Default are, as follows:

(a)     If Maker shall fail to make any payment of interest or principal when due or within five (5) days thereafter;

(b)     If Maker shall fail to comply with all other nonmonetary terms, conditions and requirements of this Secured Promissory Note; provided, however, that Maker shall be entitled to written notice thereof by Holder and shall be given thirty (30) days after receipt of such notice to cure such default;

(c)     If Maker files a voluntary petition in bankruptcy; is adjudicated a bankrupt or insolvent; files a petition or answer seeking or acquiescing in any reorganization, liquidation or arrangement under the bankruptcy laws; seeks or acquiesces in the appointment of a trustee or receiver; makes a general assignment for the benefit of creditors; or admits in writing of the inability to pay debts generally as they become due; or

(d)     If an involuntary petition in bankruptcy is filed against Maker or any proceeding involving insolvency, debt relief, or debt readjustment is filed by or against Maker, which is not dismissed within thirty (30) days after its filing.

(e)     The failure of Maker to take reasonable steps to cooperate in the procurement of any life insurance policy provided for under this Unsecured Promissory Note.

Upon the occurrence of any Event of Default, Holder may elect to declare the unpaid principal balance to be immediately due and payable.

All notices permitted or required to be given to a party hereunder shall be in writing and shall be served personally or deposited with the United States Postal Service, postage prepaid, to be sent by certified mail with return receipt requested and addressed, as follows:

as to Maker:   Akbar Ali
236 Chestnut Lake Way
Lilburn, GA 30047

2 of 3

as to Holder:   Arif Merchant
                8345 Saint Marlo Fairway Drive
                Duluth, Georgia 30097

or at such other address as Maker or Holder may specify at any time and from time to time to the other party by notice as herein provided.  Any such notice shall be deemed to the given when received, unless failure to receive it is due to rejection of such notice or change of address where notice was not given pursuant to the provisions hereof.  Notwithstanding any subsequent transfer or endorsement of this Promissory Note by Holder, or any assumption of this Promissory Note by any additional party, notice given as hereinabove provided shall be valid and sufficient notice to Maker and Holder in all respects and for all purposes unless and until notice of such transfer, endorsement, assumption or other event, as the case may be, shall be furnished to the other party in accordance with the terms of this paragraph.

        Time is of the essence of this Promissory Note.

        IN WITNESS WHEREOF, the undersigned hereby executes this Promissory Note, as Maker, intending to become bound by its provisions on the date first written above.

                                MAKER:

                                AKBAR "TONY" ___

Sworn to and subscribed before me
this 21 day of December, 2012.

Notary Public

3 of 3

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | : | CHAPTER 7 |
| | : | |
| AKBAR BALUBHAI ALI AND ANILA S. | : | |
| MAMDANI, | : | CASE NO. 15-61641-pwb |
| | : | |
| _____Debtors._____ | : | |
| | : | |
| ARIF AND IRFAN MERCHANT, | : | |
| | : | ADVERSARY COMPLAINT |
| Plaintiffs, | : | |
| v. | : | CASE NO. 17-05230-pwb |
| | : | |
| AKBAR BALUBHAI ALI aka Tony Ali, | : | |
| | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the date set forth below I served a true and correct copy of the foregoing *Amended Complaint Objecting to and Seeking to Determine Dischargeability of Debts* by placing same in an envelope with adequate postage affixed thereto and depositing the envelope in the U.S. Mail addressed as follows:

Leslie M. Pineyro
Jones & Walden, LLC
21 Eighth Street, NE
Atlanta, GA 30309

Dated: August 23, 2018

HERBERT C. BROADFOOT II, P.C.

_____*/s/ Herbert C. Broadfoot II*_____
Herbert C. Broadfoot II
Georgia Bar No. 083750
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0058
bert@hcbroadfootlaw.com
*Counsel for the Plaintiffs*